UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIO NOYOLA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>KENNETH JENNINGS; JEFFREY A. UTTECHT; STEVEN HAMMOND; DAN PACHOLKE; DICK MORGAN; JOHN REIDY; and A. DELEON-DURAN,<br><br>　　　　　　　　Defendants. | No.  4:16-CV-5041-EFS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

　　　Before the Court, without oral argument, is Plaintiff Mario Noyola's Motion for a Preliminary Injunction, ECF No. 24. Plaintiff requests that the Court require Defendants to (1) provide Plaintiff with an eye exam conducted by qualified personnel; (2) provide Plaintiff with a new eyeglass prescription; and (3) change their policies, practices, and procedures regarding the "one-eye policy," alleged delays in treatment, and alleged inadequate staffing. Defendants respond that Plaintiff has not met the requirements for a preliminary injunction, as new glasses are not "medically necessary for Plaintiff at this time" and the internal operations of a prison are subject to substantial deference.  Having reviewed the pleadings

ORDER - 1

and the file in this matter, the Court is fully informed and denies the motion.

## I.    FACTUAL BACKGROUND

Plaintiff is an inmate at Coyote Ridge Corrections Center. According to Plaintiff's Declaration in support of his motion, Plaintiff was previously diagnosed with a compound myopic astigmatism in both eyes. ECF No. 24 at 13. In October 2014, Plaintiff noted blurry vision while wearing his prescription glasses. ECF No. 24 at 14. On January 17, 2015, Plaintiff requested medical treatment for headaches, eye strain, blurred vision, and loss of depth perception related to the use of his glasses. ECF No. 24 at 14.  After sending another request for treatment in March 2015, a Snellen eye exam was conducted on April 18, 2015. Ex. A, ECF No. 24 at 25. The certified nursing assistant performing the exam, Defendant Adriana Deleon-Duran, determined that Plaintiff's vision was 20/20 in his right eye, 20/25 in his left eye, and 20/20 for both eyes. Ex. A, ECF No. 24 at 25. Based on that determination, Plaintiff did not qualify for an optometrist appointment under prison policy. Ex. A, ECF No. 24 at 25; Ex. B, ECF No. 24 at 30; Ex. C, ECF No. 24 at 35. Plaintiff was directed to sign up for sick call to address his symptoms. Ex. B, ECF No. 24 at 30.

On June 1, 2015, Plaintiff filed a grievance regarding his inability to see an optometrist. *See* Ex. F, ECF No. 24 at 42. That grievance was subsequently denied, and Plaintiff appealed that denial. *See* Ex. F, ECF No. 24 at 42. On August 7, 2015, Plaintiff went to the medical department, and the licensed practical nurse with whom he met

ORDER - 2

recommended that Plaintiff see an optometrist, made a referral to that effect, and ordered various lab tests. Ex. E, ECF No. 24 at 40. On August 21, 2015, prison officials responded to Plaintiff's grievance and directed that the health services manager recheck his vision. Ex. F, ECF No. 24 at 42. Plaintiff went to another medical appointment on September 1, 2015, and that practitioner recommended that Plaintiff meet with an optometrist. Ex. G, ECF No. 24 at 44–45. Despite these recommendations, Plaintiff represents that when he again went to medical on October 5, 2015, he was told by Defendant Kenneth Jennings that he would not qualify for an optometrist exam or new glasses under the prison policy due to the results of his April 2015 eye exam. ECF No. 24 at 18.

Plaintiff filed additional medical kites to the optometry department in October 2015. Ex. H, ECF No. 24 at 47; Ex. I, ECF No. 24 at 49. The department responded that Plaintiff did not qualify for an exam based on the prior finding that, with his glasses, he had 20/20 vision in one eye, 20/25 vision in the other eye, and 20/20 vision overall. Ex. J, ECF No. 24 at 51.

Plaintiff then sent a letter to the prison superintendent, Defendant Jeffrey A. Uttecht, who arranged for Plaintiff to meet with an optometrist. Ex. K, ECF No. 24 at 53–54; Ex. L, ECF No. 24 at 56. On January 15, 2016, the optometrist, Defendant John Reidy, conducted an exam and determined that Plaintiff's vision when wearing his glasses was 20/40 in each eye individually and in both eyes when tested together, and concluded that Plaintiff did not qualify for new glasses. Ex. M, ECF No. 24 at 58. Plaintiff again wrote to

ORDER - 3

Superintendent Uttecht, Ex. N, ECF No. 24 at 60-61. Mr. Uttecht responded as follows:

> The optometrist and provider you have seen most recently in Health Services concur that your current glasses prescription may be contributing to your symptoms. Unfortunately, with your current prescription glasses, you do not meet the criteria for new glasses. I was reassured that continuing to wear your current glasses will not cause eye damage or worsening of your vision.

Ex. R, ECF No. 24 at 66. Superintendent Uttecht also advised Plaintiff that he could pursue care outside of the prison system through the Offender-Paid Health Care system. Ex. R, ECF No. 24 at 66.

## II.  ANALYSIS

Federal Rule of Civil Procedure 65 allows for entry of a preliminary injunction in certain extraordinary circumstances. Fed. R. Civ. P. 65(a)(1); *see Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7 (2008).  To justify issuance of a preliminary injunction, a plaintiff must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter,* 555 U.S. at 20. Under this inquiry, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24. Additional considerations are also relevant when the relief requested involves prison conditions: "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

ORDER - 4

As an initial matter, the Court finds that Plaintiff's third requested relief, regarding revision of prison policy and staffing decisions, would not be the least intrusive means necessary to correct the alleged harm in this case. Plaintiff argues that his vision condition requires preliminary relief. That alleged harm, however, could be corrected through Plaintiff's first and second requested relief — providing him with an eye examination and new glasses — and does not require change on the institutional level. Accordingly, the Court denies the motion as to the third type of requested relief based on § 3626(a)(2). Below, the Court analyzes the first and second types of relief requested based on the *Winter* factors.

**A. Success on the Merits**

Under 42 U.S.C. § 1983, to state an Eighth Amendment violation based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To satisfy this two-part test, the Plaintiff must first show a "serious medical need," by demonstrating that a failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc)) (internal quotation marks omitted). "Indications that a plaintiff has a serious medical need include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition

that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *McGuckin,* 974 F.2d at 1059–60) (alteration omitted).

Second, a Plaintiff must show that the Defendants' response to the need was deliberately indifferent, meaning that an official "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung,* 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cty. of Washoe,* 290 F.3d 1175, 1187 (9th Cir. 2002)) (internal quotation marks omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Colwell*, 763 F.3d at 1066 (quoting *Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir. 1988)).

In *Colwell v. Bannister*, the Ninth Circuit held that prison officials were deliberately indifferent to a serious medical condition when they declined to correct an inmate's severe cataract, which was causing blindness in one eye, because the inmate could see well out of his other eye. *Id.* In that case, at least three medical providers recommended that the inmate's cataract be treated, but treatment was denied due to an administrative policy that an inmate's vision would not be corrected if he could see well out of one of his eyes. *Id.* at 1064. The Court held that blindness in one eye as the result of a

cataract is a serious medical condition and that "the blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy that 'one eye is good enough for prison inmates' is the paradigm of deliberate indifference." *Id.* at 1063.

In this case, Plaintiff also challenges the "one-eye" policy, but he fails to demonstrate a likelihood of success on the merits under the *Estelle* test. First, Plaintiff does not present evidence to indicate that he has a serious medical need for new glasses. Plaintiff may be legitimately experiencing some headaches and eye strain due to using an old glasses prescription. The results of Plaintiff's eye exams, however, indicate that his vision is not severely impaired and that his old prescription is still largely effective. While new glasses may be desirable and helpful to the Plaintiff, there has been no evidence presented to indicate that new glasses are medically necessary. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc) ("The Eighth Amendment 'requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable.'" (quoting *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982))).

There is also insufficient evidence of deliberate medical indifference on the part of the Defendants to establish a likelihood of success at this time. Plaintiff had his vision tested within three months of his initial complaint, subsequently made appointments with and was seen by other medical staff, and ultimately saw an optometrist. It also appears that other tests were conducted to rule out any other potential causes of Plaintiff's symptoms. *See* Ex. E, ECF

ORDER - 7

No. 24 at 40. The delay in seeing the optometrist seems to have been primarily due to the fact that the result of the initial exam indicated that Plaintiff's vision was not impaired, and Plaintiff presents no evidence that an optometrist would not have been available more quickly to address an urgent condition. In addition, while Plaintiff argues that the Defendants have failed to follow recommendations of medical practitioners, Defendants adhered to the recommendations by medical practitioners by giving Defendant a vision examination by an optometrist, and there is no evidence of any medical practitioner recommending that Plaintiff receive new glasses following these examinations.

The care given to Plaintiff, including two vision examinations and at least two other examinations by multiple medical practitioners, is not the type of disregard imagined by the *Estelle* Court, and that is particularly true when the Court considers the unique concerns of the prison environment. *See id.* at 1082 ("What is reasonable depends on the circumstances, which normally constrain what actions a state official can take. . . . [The Plaintiff] rests his claim on having to wait for dental care, but prisons are a particularly difficult place to provide such care."). The fact that Plaintiff was ultimately not given new glasses based on the results of the examinations does not establish deliberate indifference.

**B. Irreparable Injury**

Plaintiff has submitted only his own assertions to support his claim that he will be irreparably harmed if the Court does not grant him a preliminary injunction. The only piece of evidence in the record

that speaks to this issue is the letter from Superintendent Uttecht to Plaintiff, which states: "I was reassured that continuing to wear your current glasses will not cause eye damage or worsening of your vision." The results of Plaintiff's eye exams also seem to indicate that there is not a serious risk of irreparable harm. The Snellen Exam conducted by Defendant Deleon-Duran in April 2015 and the eye exam conducted by Defendant Reidy in January 2016 both indicated that Plaintiff's vision, as corrected by glasses, was not significantly impaired. The first exam resulted in a finding that Plaintiff's vision was not impaired at all with glasses, while the exam by the optometrist found minor impairment with 20/40 vision in each eye. There is no evidence at this point to indicate that those exams were flawed or resulted in erroneous findings. In addition, despite Plaintiff's statements to the contrary, there is no evidence in the record of any medical practitioner recommending that Plaintiff be given new glasses based on the results of his vision examinations. Accordingly, the Court finds that there is insufficient evidence of irreparable injury to justify issuance of a preliminary injunction.

**C. Balance of Equities and the Public Interest**

In considering the balance of equities and the public interest, the Court notes the unique concerns of the prison environment. Prison reform "is a function of state government officials," *Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981), and administrators are to be given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."

*Bell v. Wolfish*, 441 U.S. 520, 547 (1979). It is clear that "courts may not institute reform programs on their own under the guise of correcting cruel and unusual punishment." *Wright*, 642 F.2d at 1135. These considerations weigh against the Court interfering with the internal operations of a prison absent clear indication of a civil rights violation.

In addition, as explained above, there is no evidence that new glasses are medically necessary to the Plaintiff. The Court recognizes that an outdated prescription may be causing Plaintiff some discomfort. In addition, the cost of providing an examination to the Plaintiff and providing him with new glasses may be insignificant in the prison's institutional scheme, but it would likely be cost-prohibitive to provide such an examination and new glasses to all similarly situated inmates. The Court finds that the prison has an interest in maintaining a consistent policy. In addition, due to the resources and cost that would be required to change the prison's glasses policy and to increase medical staffing, the Court finds that the public's interest does not favor granting the requested relief at this juncture.

### III. CONCLUSION

Weighing the factors considered above, the Court finds that issuance of a preliminary injunction is not appropriate. Plaintiff has not demonstrated a high likelihood of success at this time. There is also no evidence that an irreparable injury would result from failure to grant an injunction. Based on the institutional concerns involved and the fact that no medical need for new glasses has been

demonstrated, the Court also finds that the equities weigh in favor of denying the motion.

Accordingly, **IT IS HEREBY ORDERED**: Plaintiff's Motion for a Preliminary Injunction, **ECF No. 24,** is **DENIED.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to Plaintiff and all counsel.

**DATED** this   22nd   day of December 2016.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

Q:\EFS\Civil\2016\5041.Noyola.ord.deny.prelim.inj.lc02.docx

ORDER ~ 11