FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 16, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIO NOYOLA,<br><br>              Plaintiff,<br><br>    v.<br><br>JOHN ROGERS; JEFFREY A. UTTECHT; STEVEN HAMMOND; DAN PACHOLKE; DICK MORGAN; JOHN REIDY; and A DELEON-DURAN,<br><br>              Defendants. | No. 4:16-CV-5041-EFS<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, is the above-captioned Defendants' Motion for Summary Judgment, ECF No. 94. Defendants ask the Court to grant summary judgment in their favor, arguing that (1) Mr. Noyola's claims are moot, (2) he has failed to state a viable claim, and (3) they are entitled to qualified immunity. Because Mr. Noyola has failed to demonstrate that the alleged conduct violated a clearly established constitutional right, the Court finds Defendants are entitled to qualified immunity and grants their motion for summary judgment.

### I. Background

Inmates in the custody of the Washington State Department of Corrections (DOC) receive medical care pursuant to the DOC Offender

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

Health Plan (OHP). *See* ECF No. 98-1, Exs. 1-3. The OHP "provides medically necessary health and mental health care" to offenders incarcerated in DOC facilities. ECF No. 98-1 at 5.[1] The OHP also contains policies advising medical providers when treatments are considered "medically necessary" — i.e., under what circumstances a prisoner qualifies for a particular medical intervention under the relevant OHP policy.

From April 2014 to January 2016, the OHP's eye-related policy provided:

> A scheduled optometry visit for routine testing of visual acuity (VA) is not authorized. Before referral to an optometrist, screen best corrected VA in the medical clinic with the patient's current glasses using a standard Snellen chart . . . . Routine optometry referral may be made if two or more years [have] passed since the last evaluation AND the offender complains of difficulty with distance vision AND VA screening in the medical clinic shows corrected vision to be 20/60 or worse in the better eye.

ECF Nos. 95 at 5, 98-1 at 157. From January 2016 forward, the policy was identical, except that the minimum period between optometry evaluations was extended from two to three years. ECF Nos. 95 at 5, 98-1 at 151–52.

Plaintiff Mario Noyola is a DOC inmate; until recently, he was housed at Coyote Ridge Correctional Center in Connell, Washington. *See* ECF No. 99-1 at 31, 33. In January 2015, Mr. Noyola requested to receive an updated glasses prescription and was placed on a waiting list for a

---

[1] Where a page number is cited, that number refers to the page assigned by the Court's ECF system, which is not necessarily the page number printed on the document itself.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

Snellen eye exam.[2] ECF No. 113-2 at 2. On March 28, 2015, Mr. Noyola did not appear for his scheduled appointment with Defendant A. Deleon-Duran, CNA, and it was rescheduled. ECF No. 99-1 at 2.

Mr. Noyola did appear for the re-scheduled appointment on April 18, 2015, where he complained of constant headaches and asserted that objects were "not as clear as [they] once were." ECF No. 99-1 at 4. A Snellen exam revealed that his corrected vision was 20/20 when using both eyes, and his request for new glasses was denied. *Id*. Mr. Noyola filed a grievance, alleging new eyeglasses were a medical necessity and that he was in a substantial amount of pain. ECF No. 96-1 at 2. This grievance was denied at Levels 1 and 2 of the DOC review process. *Id*. at 2–7. At Level 3, the DOC official noted that while there was no evidence Mr. Noyola was denied medically necessary care, he may "need to be screened for close vision to determine if [he] fit the criteria for reading glasses" and thus his grievance was partially supported. *Id*. at 7. He was encouraged to work collaboratively with his healthcare providers to attain the best medically necessary care for his health conditions. *Id*.

Mr. Noyola had additional appointments with other medical providers, including Defendant John Rogers, ARNP, on August 7, 2015, September 1, 2015, and October 5, 2015, during which he complained of blurry vision and continuing headaches. On September 1, 2015, he reported that his headaches were worsening, and on October 5, 2015, he

---

[2] A Snellen exam is a routine screening procedure during which a patient reads from a chart of letters from a measured distance.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

stated they remained the same. *See* ECF No. 99-1 at 6, 8, 11, 14. Each provider referred Mr. Noyola for an optometry appointment. *Id*.

On January 15, 2016, Mr. Noyola was seen by Defendant optometrist John Reidy. *See* ECF No. 99-1 at 14, 16. Defendant Reidy conducted a visual acuity screening exam, which revealed Mr. Noyola's corrected vision was 20/40 when using each eye and both eyes. *Id*. Because Mr. Noyola's vision was better than 20/60 in at least one eye, Defendant Reidy concluded that he did not meet DOC criteria for an eye exam and ended the appointment. *Id*.

Mr. Noyola filed this lawsuit in April 2016, alleging Defendants were deliberately indifferent to his serious medical needs, thus violating the Eighth Amendment to the Constitution. ECF No. 1-1 at 30. He further alleged he suffered from myopic astigmatism in both eyes and that the DOC's refusal to provide him an updated glasses prescription gave him blurry vision, interfered with his ability to read and watch television, and caused "severe chronic headaches and substantial eye strain." ECF No. 1-1 at 5–6.

After filing suit, Mr. Noyola continued to request an updated glasses prescription. On September 27, 2016, Mr. Noyola was seen by J. Nelson and complained of blurry vision and chronic headaches. ECF No. 99-1 at 18. On November 15, 2016, Mr. Noyola failed to appear at an appointment that was scheduled to address his headaches and "visual disturbances." ECF No. 99-1 at 20. On December 1, 2016, he was again seen by Defendant Rogers, ARNP. *Id*. He complained of headaches and impaired visual acuity, but — like before — he "had no sudden or acute vision loss." ECF No. 99-1 at 22. In response to his dissatisfaction

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

with his medical care, Mr. Noyola filed another grievance, which was again denied at Levels 1 and 2, and found to be partially supported at level 3. ECF No. 96-1 at 9–13. Mr. Noyola was again encouraged to work with his medical providers to address his concerns and informed that he remained free to meet with an optometrist outside of DOC at his own expense. *Id.*

On January 1, 2017, Mr. Noyola had an appointment with V. Pence, NAC, during which he complained of blurry vision, problems with depth perception, and headaches. ECF No. 99-1 at 25. A Snellen exam revealed his vision to be 20/50 when using each eye and both eyes. *Id*. Again, he did not qualify for new glasses under the applicable OHP policy, and he did not receive a new prescription.

On April 7, 2017, Mr. Noyola was seen by J. Rice, MD, to address further complaints of headaches. ECF No. 99-1 at 27. He was prescribed ibuprofen. *Id*. On April 19, 2017, Mr. Noyola was again seen by Defendant Reidy for an optometry exam, where he tested at 20/80 when using each eye and both eyes and was diagnosed with myopia and astigmatism. ECF No. 99-1 at 27, 29. Having met the OHP guidelines for new glasses, Defendant Reidy referred him for new prescription glasses at the DOC's cost. *Id*. Mr. Noyola received the new glasses on June 8, 2017, which have reportedly relieved his symptoms. ECF No. 99-1 at 35.

## II. **Summary Judgment Standard**

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact. *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016). The district

court's function at summary judgment is "not to weigh evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III. Analysis

Defendants move this Court for an order of summary judgment. They contend that (1) Mr. Noyola's request for injunctive relief is moot; (2) Mr. Noyola has failed to state a viable claim under the Eighth Amendment; and (3) Defendants are entitled to qualified immunity from Plaintiff's claim for damages. ECF No. 94 at 2, 8, 18. Because Mr. Noyola's claim for injunctive relief is moot, Defendants in their official capacities are not "persons" under § 1983, and qualified immunity protects Defendants from his claims for money damages, Defendants' motion for summary judgment is granted.

**A. Mootness**

Federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Before a federal court may exercise jurisdiction over a case, it must resolve the question of mootness. *Id*. Generally, a case becomes moot where "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 565 U.S. 165, 172 (2013). However, if a case is "capable of repetition but evading review," a court may exercise jurisdiction over

a case, even if that particular plaintiff's injury has been resolved. *See Roe v. Wade*, 410 U.S. 113, 125 (1973).

In addition to his claim for money damages, Mr. Noyola seeks injunctive relief "requiring the Defendants to immediately arrange for the DOC optometrist to conduct a full eye exam, treat Plaintiff's eye condition and provide a new [prescription]." ECF No. 37 at ¶ 119. Defendants argue that this claim is moot, and this Court agrees.

Mr. Noyola was transferred to a new prison facility and received new glasses in June of 2018. ECF No. 99-1 at 35. He does not dispute that these new glasses resolved his symptoms but argues "there is a reasonable expectation that the violation will reoccur since Plaintiff will be in Defendants' custody for additional years and their policies have yet to change for providing vision care." ECF No. 113 at 21. This argument is unpersuasive. Mr. Noyola is not so far separated from federal courts that a future claim would evade review. *See Dilley v. Gunn*, 64 F.3d 1365 (holding capable of repetition yet evading review exception did not apply to inmate's claim that he was denied access to prison law library).[3] Mr. Noyola's claim for injunctive relief is moot, and Defendants' motion is granted in this regard.[4]

---

[3] The Court also notes that Mr. Noyola has not made an adequate showing that he is likely to suffer the same alleged wrong in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, [a plaintiff] is no more entitled to an injunction than any other citizen . . . .").

[4] Mr. Noyola also claims that the OPH vision policy itself violates his constitutional rights. *See* ECF No. 37 at 5-7. However, Mr. Noyola is unable to bring a suit against DOC because it is a state agency and not a "person" amenable to suit under § 1983. *See Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) (explaining state agencies are protected from suit under § 1983). Accordingly, there is no case or controversy from which he has standing to challenge the policy itself. *But cf. Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (permitting suit against policies or customs of municipalities that are responsible for violations of

**B. Official v. individual capacity**

The parties dispute whether Mr. Noyola brings claims against Defendants in their official or individual capacities. The Court notes that Mr. Noyola's Second Amended Complaint appears to name Defendants only in their official capacities. *See* ECF No. 37, ¶ 5-11. Nonetheless, Mr. Noyola is a pro se plaintiff, and thus his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus* 551 U.S. 89, 94 (2007). Accordingly, the Court construes Mr. Noyola's complaint liberally to name all Defendants in both their official and individual capacities. *Id.; see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

**C. "Persons" eligible for suit under 42 U.S.C. § 1983**

Under 42 U.S.C. § 1983, a plaintiff may file suit against a "person" who, under color of law, deprives the plaintiff of a federal statutory or constitutional right. However, a state government is not a "person" under § 1983 and thus cannot be sued under the statute. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989); *Ngiraingas v. Sanchez*, 495 U.S. 182 (1990). Similarly, state officials who are "sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 26 (1991).

---

constitutional rights). Nor does Mr. Noyola have any standing to challenge the structure or actions of the DOC Care Review Committee because the CRC "never reviewed Plaintiff's vision complaints." ECF No. 113 at 21. Thus, he did not suffer any injury as a result of CRC action. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (explaining that standing requires (1) injury in fact, (2) a causal connection between the alleged conduct and injury, and (3) redressability.).

By contrast, officers sued in their personal capacity come to court as individuals and are thus "persons" amenable to suit for the purposes of § 1983. *Id*. Accordingly, the Court grants Defendants' motion for summary judgment as to Mr. Noyola's claims against Defendants in their official capacities.

**D.   Eighth Amendment "deliberate indifference" standard**

To state an Eighth Amendment violation based on prison medical treatment under 42 U.S.C. § 1983, an inmate must show "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To satisfy this two-part test, a plaintiff must first show a "serious medical need" by demonstrating that a failure to treat the injury or condition "could result in further significant injury" or cause the "unnecessary and wanton infliction of pain." *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).

Second, a plaintiff must show that the defendant's response to the need was deliberately indifferent, meaning that an official "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung,* 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cty. of Washoe,* 290 F.3d 1175, 1187 (9th Cir. 2002)) (internal quotation marks omitted). Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Colwell*, 763 F.3d at 1066 (quoting *Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir. 1988)). Either way, the plaintiff must show that the defendants "chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. Mcintosh*, 90 F.3d 330,

332 (9th Cir. 1996) (citing *Farmer v. Brennan*, 114 S. Ct. 1970, 1978–79 (1994). Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

**E.  Qualified Immunity**

Defendants raise a defense of qualified immunity to Mr. Noyola's claim for damages. *See* ECF No. 94 at 18. The qualified immunity doctrine shields government officials performing discretionary functions from civil liability if their actions were objectively reasonable in light of clearly established law at the time they acted. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The qualified immunity doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotations omitted).

In *Saucier v. Katz*, the Supreme Court laid out a two-pronged inquiry for courts to use in determining whether a public official's actions were protected by qualified immunity: first, taken in the light most favorable to the party asserting the injury, did the officer's alleged conduct violate a constitutional right? And second, was that right clearly established at the time of the alleged injury? 533 U.S. 194, 201 (2001). To avoid unnecessary litigation of constitutional issues, courts may "exercise their sound discretion . . . in light of the circumstances" when deciding which of the two prongs to address first. *See Pearson v. Callahan*, 555 U.S. 223, 236–42 (2009).

In this case, the Court first turns to the "clearly established" prong of the *Saucier* analysis. To satisfy this prong, a plaintiff must

show "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotations omitted); *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1388 ("The plaintiff bears the initial burden of proving the right was clearly established."). A plaintiff "must offer more than general conclusory allegations that the defendants violated a constitutional right." *Id.* at 1389 (internal quotations omitted). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

Mr. Noyola cites a number of cases that he argues clearly establish deliberate indifference to a prisoner's loss of vision as a constitutional violation. *See* ECF No. 113 at 12 (citing *Colwell v. Bannister*, 763 F.3d 1060 (9th Cir. 2014) and *Koehl v. Dalsheim*, 85 F.3d 86 (2nd Cir. 1996)). For instance, Mr. Noyola cites *Colwell v. Banister* for the proposition that the "loss of vision, though not life threatening, can be a serious medical need." ECF No. 113 at 12; 763 F.3d 1060 (9th Cir. 2014).[5] However, upon an examination of existing case law, the Court finds that neither *Colwell* nor any other case within the Ninth Circuit clearly establishes "beyond debate" that Mr. Noyola's rights were violated.[6]

---

[5] The Court assumes for the sake of argument that controlling circuit authority — here, the Ninth Circuit – could be a "dispositive source of clearly established law." *See Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (assuming arguendo, but not holding, that controlling circuit authority could "clearly establish" a right).

[6] *See Reichle*, 566 U.S. at 664; *Hamby*, 821 F.3d at 1093. ("Crucially, for purposes of determining qualified immunity," a trial court is to engage in

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11

In *Colwell*, the Court of Appeals for the Ninth Circuit held that prison officials were deliberately indifferent to a serious medical condition when they declined to correct an inmate's severe cataract, which was causing complete blindness in one eye. *Id.* In that case, at least three medical providers recommended that the inmate's cataract be treated, but treatment was denied due to an administrative policy that an inmate's vision would not be corrected if he could see well out of one of his eyes. *Id.* at 1064. Notably, the prisoner's right eye was blind "for more than a decade." *Id*. at 1067. It affected "his perception and render[ed] him unable to see if he turn[ed] to the left." *Id*. His monocular blindness caused him physical injury: "he ran his hand through a sewing machine on two occasions while working in the prison mattress factory; he ran into a concrete block, splitting open his forehead; he regularly hit[] his head on the upper bunk of his cell; and he bump[ed] into other inmates who [were] not good-natured about such encounters, triggering fights on two occasions." *Id*. at 1067–68. Accordingly, the court held that complete loss of vision in one eye as the result of a cataract is a serious medical need. The court also stated that "the blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy that 'one eye is good enough for prison inmates' is the paradigm of deliberate indifference." *Id.* at 1063.

*Colwell* may have clearly established that a *complete* monocular blindness and subsequent deprivation of medically-necessary surgery is

---

"an examination of existing case law" and determine whether alleged conduct is "indisputably unconstitutional.").

a constitutional violation. However, *Colwell* did not clearly establish — such that every reasonable official would have understood — that *any* loss of vision and subsequent deprivation of an optometry examination or an updated glasses prescription was a constitutional violation. *See al-Kidd*, 563 U.S. at 741; *see also Estelle*, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").

Here, Mr. Noyola's partial loss of vision, while certainly inconvenient and uncomfortable, was undeniably less severe than that of the *Colwell* plaintiff. The record does not indicate Mr. Noyola suffered any accidents while awaiting an optical examination, nor did he lose vision entirely on one side. In fact, the objective medical evidence indicates Mr. Noyola's corrected vision, though gradually worsening, was at least reasonably acute for the two years leading up to the time that the Department of Corrections granted him an optometry exam and prescribed him new glasses. *See, e.g.*, ECF No. 99-1, Exs. 2, (4/18/2015: 20/20 in both eyes), 6 (10/5/2015: 20/40 in both eyes), (1/14/2016: 20/40 in both eyes); (1/7/2017: 20/50 in both eyes), (4/19/17: 20/80 in both eyes, new glasses ordered). Accordingly, although *Colwell* does stand for the proposition that extreme, treatable eye problems can give rise to a serious medical need, *Colwell* did not clearly establish "beyond debate" that Defendants were violating Mr. Noyola's constitutional rights by declining to administer treatment for more moderate eye problems. *See Hamby*, 821 F.3d at 1092. The Court's further

examination of Ninth Circuit case law failed to reveal a case that would have met the "clearly established" standard.[7]

Mr. Noyola also directs the Court's attention to a case from the Second Circuit, where he argues that a "less severe" loss of vision was held to be a serious medical need. *See* ECF No. 113 at 12; *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2nd Cir. 1996). Mr. Noyola has not explained how a case arising from the Southern District of New York and heard before the Court of Appeals for the Second Circuit could possibly clearly establish, "beyond debate," a rule of law that governed prison officials in Washington State. Absent such an explanation, the Court is unpersuaded by this argument.

Nonetheless, even if such a scenario were possible, the *Koehl* plaintiff's loss of vision was hardly "less severe" than Mr. Noyola's. In that case, after guard confiscated his eyeglasses, Mr. Koehl's "left eye . . . shifted fully into the corner of the socket and [was] almost sightless." *Koehl*, 85 F.3d at 87. Defendants' alleged conduct did not cause such a significant injury, nor did Mr. Noyola's loss of vision rise to an equivalent level of severity. Accordingly, even if somehow controlling, *Koehl* would still not clearly establish beyond debate that Defendants' conduct violated the Constitution. *See Hamby*, 821 F.3d at 1092.[8]

---

[7] *See, e.g.*, *Williams v. Burns*, 172 F.3d 61 (9th Cir. 1999) ("Because [the plaintiff] failed to offer any evidence his eyes became worse due to the delay in receiving glasses, his deliberate indifference claim fails."); *Aytch v. Sablica*, 498 F. App'x 703, 705 (9th Cir. 2012) (plaintiff failed to raise a triable issue of fact for deliberate indifference when his vision problems were "corrected when he received eyeglasses.").

[8] The Court's review of other Circuits' case law further discredits Mr. Noyola's argument that the alleged constitutional violation was clearly established. *See McKaye v. Toombs*, 930 F.2d 919 (Table) (6th Cir. 1991)

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14

**IV. Conclusion**

Having found that Mr. Noyola has failed to demonstrate how the alleged constitutional violation was clearly established, the Court declines to address the second prong of the *Saucier* analysis — that is, whether the Defendants' alleged conduct actually violated Mr. Noyola's constitutional rights. In other words, the Court grants Defendants' motion for summary judgment on qualified immunity grounds, without addressing whether Mr. Noyola has demonstrated (1) a serious medical need or (2) deliberate indifference on behalf of the Defendants. *See Estelle*, 429 U.S. at 104.[9] In doing so, the Court follows the direction of the Supreme Court to avoid resolving "difficult and novel questions of constitutional interpretation that will have no effect on the case."[10]

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 94**, is **GRANTED.**

---

("[T]he failure to provide plaintiff with glasses did not demonstrate he was deprived medical care . . . ."); *Goodman v. Runion*, 676 Fed. Appx. 156 (4th Cir. 2017) (holding optometrists did not violate Eighth Amendment where they, in compliance with prison policy, declined to give plaintiff contact lenses when he alleged prescription glasses gave him chronic headaches).

[9] That said, after reviewing the record, Court notes that Mr. Noyola would likely struggle to demonstrate a constitutional violation. *See Peralta v. Dillard,* 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc) ("The Eighth Amendment requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable." (internal quotations omitted)); *id.* at 1082 ("What is reasonable depends on the circumstances, which normally constrain what actions a state official can take . . . . [The plaintiff] rests his claim on having to wait for dental care, but prisons are a particularly difficult place to provide such care."); *see also Estelle,* 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").

[10] *See generally Callahan*, 555 U.S. at 239–243 (discussing the benefits of permitting lower courts to bypass the first step in the *Saucier* anlysis in cases where constitutional right is not clearly established); *see also al-Kidd*, 563 U.S. at 735 ("Courts should think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional interpretation that will have no effect on the case.").

    **2.**    Plaintiff's claims are **DISMISSED WITH PREJUDICE**, with all parties to bear their own costs and attorney's fees.

    **3.**    All pending motions are **DENIED AS MOOT.**

    **4.**    All hearings and other deadlines are **STRICKEN.**

    **5.**    The Clerk's Office is directed to **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to Mr. Noyola and defense counsel.

**DATED** this  16th   day of February 2018.

                              s/Edward F. Shea
                                  EDWARD F. SHEA
                    Senior United States District Judge